24-12 448 All right. We have Ms. Neu here for the government and Ms. Kime here for the appellee. Ms. Neu, good morning. It pleases the court. Jordan Neu here on behalf of the United States. With me at council table is Justin Keene, the assistant United States attorney who handled the motion to suppress before the district court. The Leon good faith exception to the exclusionary rule may not be the panacea for every defect in a search warrant, but I think this court can take the Leon court at its word when it says that exclusion should be the exception and not the rule when a law enforcement officer engages in objectively reasonable behavior in reliance on a search warrant. And so we're here today, the government is asking this court to conclude that Judge Walker erred as a matter of law in finding that the Leon good faith exception did not apply to Detective Osborne's reliance on an execution of the search of the synchronous warrant in this case. Now we know that this is a question of law. It turns on what a reasonable officer would perceive based on the warrant and about the circumstances of the search. This court has announced a two-part test for assessing whether or not a law enforcement officer's reliance on a search warrant that was signed by a judge is objectively unreasonable. The first part of this analysis turns on whether or not there is indicia of probable cause in the search warrant, right? And so that turns entirely on the four corners, the facts that are conveyed in the four corners of the search warrant that was presented to the judge and signed by the judge. So maybe, I mean, I think we all agree that that's where the focus is. So maybe let's just like look at the warrant. Tell us like what on the face of the warrant you think is like sort of your strongest piece of evidence that there's a probable cause. Absolutely, your honor. And so I think this warrant, I think we can say at the outset that the government's not here to complement this warrant. There's three different parts to it. We got a substantial background section that details Detective Osborne's experience, training and experience specifically in the area of child exploitation cases. We've got a detailed section addressing terms that commonly arise in these types of cases. And I understand Judge Walker was reasonably concerned with the probable cause statement, the actual factual recitation that occurred in this case about the cyber tip that came to Detective Osborne. But we think there's, I guess, I think there's really three parts about this warrant in terms of looking at the four corners of it that I would like to convey to the court. So Judge Walker was very firm that he viewed this, looking primarily at this probable cause statement to be a bare bones, conclusory statement that no reasonable law enforcement officer could establish probable cause. I think if this court actually takes a step back and looks at what the Supreme Court has described to be conclusory statements that have been included in search warrants, this is not that. Now this isn't a model search warrant. This is not something that I think that we would hope that our best law enforcement officers would present to a neutral judge for signing. But there actually are a lot of facts here. And so... What are the facts? I mean, like so I'm not particularly moved by the first section describing his background. That doesn't have anything to do with this case. I'm not particularly moved by the definitions that don't have anything to do with this case. So I'm looking at the third section where it just seems to be sort of a bald statement. I reviewed this cyber tip, which was generated by NCMEC, after an administrator, this sort of nameless, faceless administrator from Synchronos advised a user of uploaded suspected child sex abuse material. What did the review... What do we know from the face of the warrant? What did the review entail? So we don't know... That is weakness. And that's why we're not talking about probable costs here. We don't know exactly why this administrator of Synchronos generated and submitted the cyber tip. But what I think what Judge Walker should have done and what the government is asking this court to do is view Synchronos' cyber tip that they generated as a tip, right, from a known witness. Why known? Why is it a known witness? Who's this administrator? So we don't know the administrator, but we know that it was Synchronos, right? And we know based on some of the background information given in the warrant that it was generated by Synchronos as part of its statutory obligation to report apparent violations of federal child pornography law. So I think when we're talking about a tip from a witness, we know going back to Illinois v. Gates, right, there's a totality of the circumstances analysis that turns on the basis of the witness's knowledge, veracity, and corroboration by law enforcement. And we think that there are indications of all three of those things in this warrant that could cause the judge who signed it to credit the conclusion of the Synchronos administrator that there was suspected CSAM in this account. Just so I understand, so by analogy to Gates, if you're looking for, and you said earlier, like there's a known informant here, in your telling, the known informant isn't Nick Nick, and it's not the nameless, faceless administrator. It's Synchronos sort of as an entity? Yeah, as an entity satisfying its statutory obligation as a provider, as an ESP, to report child pornography when it has actual knowledge of an apparent violation of federal child pornography law. And so I think that gives the judge who's reviewing this a basis for crediting Synchronos' basis of knowledge. So again, the statute requires actual knowledge is when it's triggered. So I think the judge who's looking at this and knows Synchronos is reporting this, generating a cyber tip pursuant to its statutory obligations, has actual knowledge of an apparent violation. I think there are facts actually included in this affidavit that corroborate that, right? So it's not just Synchronos saying, we think there's child pornography in this account. It's that we think it was uploaded into this account on a particular date. And so that corroborates that wherever this information is coming from, the person who's generating it has some insight into the contents of the account. And so I think that there are facts here that could have allowed the signing judge to think that Synchronos, as the tipster here, had a basis of knowledge that would warrant crediting the tip. The second part of this is veracity. And again, I should probably step back and say the Supreme Court's been pretty clear. It's a totality of the circumstances analysis. We have to consider all of these things together. A defect in one or a weakness in one can be sort of supplanted by another. I think a judge who is familiar, who reads the probable cause statement, who is familiar or reads the definitions provided by Detective Osborne, which referenced the statutory scheme under which this tip was generated, would have a basis for believing there's a high degree of veracity associated with this tip, right? The idea being that Synchronos has little incentive to falsify cyber tips that it's required by law to generate. They do gain, if there's a willful failure to generate a tip, it is subject to financial penalties. And that's asymmetrical, right? There's a penalty if they under-report, but not if they over-report. Right, but I think a judge who's reviewing this can credit that this scheme that recognizes that providers are going to be uniquely situated for identifying child pornography on their web hosting and things like that, will have a good faith basis, high in veracity, don't have a lot of motivation to frivolously report tips. And again, I understand... We don't know that for a fact, but you're saying it's a reasonable assumption. It's a reasonable... A judge looking at this who's familiar... It's a statutory duty. Yes, it's a statutory duty. And the law enforcement can say, I can reasonably assume that they're following their statutory... Exactly, Judge Huck. And the other thing I would say, to the extent that there's a concern about over-reporting, we're talking about probable cause here. We're talking about a substantial chance that there's child pornography on this account based on a tipster who has a basis of knowledge about the contents of the account. And so, again, it's probable cause, so that's not something that I would... It seems to me this is the case, not of the lack of probable cause, because subsequent events showed there was probable cause, but a failure to communicate that. I entirely agree with that, Your Honor. And I think the difficulty here is that we have this two-step analysis. The first part of this turns entirely what's in the contents of this warrant. And I understand Judge Walker's concerns that there's a lot of background information, there's a lot of definitions. But I think if you read the definitions in harmony and understand the statutory scheme, as a judge who was viewing this would do, the question is, could a reasonable law enforcement officer believe that there's enough facts, there's enough context in here... Are you suggesting that we should take into consideration those four examples or categories? Are you referring to the categories? Yes. And that was going to be my next point. So we think that Judge Walker... Let me ask you this. I'm looking at definitions in page two of the application or the affidavit that says, for purpose of this warrant application, and then it goes on to say it's important to discuss the several important definitions. Is that in the nature of kind of adopting by reference? I think so. I think that's clearly... Detective Osborne's very experienced in this. He's indicating that these definitions will be helpful as you review the probable cause statement that follows it. And I understand Judge Walker had a concern, and I think it's a valid concern to some extent, that a lot of this seems to be boilerplate, right? The section, the definition that talks about cyber tip line reports, talks about things that may or may not have happened. Frankly, I can understand that that frustrates the probable cause analysis because it says we don't know what NCMEC did. We don't know exactly what Synchronous reported when the cyber tip came in. But I think it also gives the judge a basis. It's upfront with the judge, right? Don't overvalue the cyber tip because here's the limitations of what may or may not have been in this. We do think the categorization system does provide helpful context into what that tip looked like when it came in. And the reason for that is twofold. One, we think a reasonable judge viewing this affidavit in its entirety would think that Synchronous qualifies as an ESP, right? It's an electronic storage provider for, in this case, the Verizon Cloud. Can I ask you one question just about this briefly and something you said earlier about statutory obligation? Does your position basically boil down to an argument that if an ESP provides a cyber tip to NCMEC pursuant to the statutory obligation, done, good faith? No, Your Honor. I think there needs to be facts in here that give the judge a basis for crediting. And what's sort of the extra, like, oomph here? What's the gloss? Is it suspected of uploaded on a certain date? I think that helps, right? Because we're talking about facts, not just the bare conclusion that there's child pornography in the account. There are facts in here that substantiate that this provider has knowledge of the contents of the account. And so I take your point that it shouldn't be the case that the warrant can just say, we got a cyber tip in, and therefore, you know, regardless, if we can get it past the judge, we have probable, or we have good faith. I think there has to be more to that, but that argument also assumes that the judge is going to abdicate its responsibility to assess probable cause, and I see my time has expired. Thank you. Okay. Very well. You've got some rebuttal time coming. Ms. Kime, let's hear from you. May I please the court? Counsel? Good morning. My name is Stacey Kime, and I represent the affilee, Kevin Gibbs. This court should affirm suppression because no reasonable officer would assume that a conclusory cyber tip wholly supplanted basic police work. Now, I'd like to start by emphasizing two major limitations with the cyber tip system. The first is that the cyber tip system can be easily infiltrated by bad actors who have no connection whatsoever to ISPs, to NCMEC, or to the police. That wasn't the basis for the granting of the motion. Your Honor, there are some aspects of the review here which are de novo, and the overall reasonableness question is de novo. That was not brought before Judge Walker. I'm sorry, Your Honor? It was not an issue with Judge Walker. Absolutely, it's an issue that's before Judge Walker. I think below one of the main contentions of the defense was that there's no evidence that this synchronous employee... Maybe I missed it in his order. I didn't see that he gave much discussion about that. No, Your Honor. What I'm saying, you're correct. The exact words I just used are new. I'm not trying to imply that that's present in the order. However, a focus below was the fact that there is no requirement that a synchronous employee, or that synchronous themselves, or NCMEC have any personal knowledge of the contents of the tip. What I'm explaining to the court is one scenario in which a cyber tip could be filed without that personal knowledge. If anybody can call an ISP and allege that on a particular date and time somebody uploaded child pornography, that call could be anonymous and untraceable, and the ISP would have a statutory obligation to take that bare-bones accusation and put it into a cyber tip. There is no obligation statutorily that they investigate or verify the accusation. The problems continue and we can... What should have been done in this case in that regard? I'm curious. Every cyber tip comes with a point of contact and a phone number for the ISP. All Detective Osborne had to do was call the number on that line and say, may I see the photo? Could you describe it for me? It would have taken under two minutes. The number on which line? On the defendant's line? I'm sorry, Your Honor? On which line? Just call the number on the line. Yes, Your Honor. By statute, cyber tips must contain a point of contact and a phone number. So you're asking the officer to call, Officer Osborne, to call the defendant? I'm asking the... Oh, I'm sorry, Your Honor. A point of contact for the Synchronos employee. Okay. So who is 779-227-4751? My understanding is that's the number that's linked with the defendant. Oh, I see. So my point is simply that corroboration in this case or verification, investigation would have been incredibly easy. Now, if an ISP receives any... I don't think anybody's... They're arguing, but I don't think legitimately arguing that there was actual probable cause. The issue here is it was a good faith attempt. Exactly, Your Honor. And on the topic... Well, Leon, it's got a fairly friendly opinion there with regard to the balancing of the cost-benefit. I don't recall in the order that Judge Walker did that analysis saying, what do we need to do to protect the Fourth Amendment rights of the defendant versus truth-seeking goal, which is a goal, and not to let criminals go free when they're, in fact, guilty? And I don't recall any balancing at all. He seemed to assume because there wasn't probable cause. He then jumped to, well, there was nothing there and nothing sufficient in the affidavit. Therefore, nobody, no reasonable officer would have relied on that. And yet, we have an officer with seven and a half years of experience in this very field. We have a legal officer reviewing the affidavit and the application, and a state court judge approving it. Yes, Your Honor. Were all those people not doing their jobs? Your Honor, I'd like to start with your premise about the Leon decision. Your Honor is correct that in certain, in probably in most applications when there's not probable cause, the court does engage in a balancing test, the value of deterrence versus the value of letting an offender go free. But for cases that are on all fours with Giardinello, Aguilar, and Nathanson, in those cases, the Supreme Court has already done the balance for us. There is no possibility that a police officer can rely on a conclusory accusation that does not provide the magistrate with a substantial basis for determining probable cause and get around the good faith doctrine. If Osborne had said the cyber tip reflected one of the four categories in the definition, would that have been sufficient? Well, it would depend on where that basis of knowledge came from. If Detective Osborne averred that he viewed the photograph and then it fell within that classification, then absolutely yes, I think that would provide probable cause. Let me ask you, why would that be? There are a couple of different points that you're making here, and they kind of converge a little bit. One, you sort of don't like the cyber tip idea, and two... I'm sorry, Your Honor, I couldn't hear that. Well, the first, you kind of pushed back a little bit about the cyber tip sort of being sort of inherently reliable, but can you also sort of say, look, we need more detail about the child pornography itself? And where do you get that idea from, I guess, because is it not good enough that the officer says, let me give you this hypothetical. An officer says, I was informed by a TSA agent that they discovered cocaine in this person's bag, and so I want to get a warrant to search their bag and their car that they drove to the airport. Like, why would the officer have to say, like, well, I mean, what would he say besides just, like, this person told me there was cocaine? Well, your hypothetical has a difference from our case. The TSA agent in your hypothetical said that they discovered cocaine. So I think the reliability kind of totality of the circumstance can be supplied in many different ways. One might be... Okay, so what if the TSA agent said, I saw child pornography in the bag? So that would be a closer call. Yeah, and that's what I'm trying to figure out. Why? We do still have... We don't require the officer to, like, describe the cocaine. Like, you know, the TSA agent told me that he saw, like, white powder in a bag that was, like, labeled cocaine on it, right? Like, why would we require the officer to say, like, this was the picture that the TSA agent saw? Well, the nature of the contraband is inherently different as well. If someone's walking around the airport with a plastic baggie of, like, white powder baking soda, right, that's pretty inconceivable. The idea that a mother might have a picture on her phone of her infant and they're taking their first bath, or even one that displays prominently the genitals, for example, if a mother takes a photo of a diaper rash to send to a co-parent or to a doctor or nurse to determine whether or not someone needs to take off work that day. The nature of determining something is contraband in the context of child pornography is inherently more difficult. And what we have in a cyber tip system is a system- That raises a question. I think one of the problems I'm having here is we have all these cases to deal with traditional informants. Now we're dealing with new technology, the internet. It seems to me we have to have a new way of thinking about probable cause under those circumstances. That's correct, Your Honor. It seems to me the statutory regime is set up, if it's followed, meets that goal. The Supreme Court has- Not perfect, maybe, but it seems to me it may be enough to meet the good faith requirement in the law. The Supreme Court has told us to apply not different rules, but more cautious rules when we're dealing with searches of new technologies. The search here that was conducted is more intrusive and more humiliating than the most exhaustive search of a person's home. So I think that's what's different here. And if we have a system that allows conclusory, bare-bones accusations to be made, even on an anonymous basis, in any other context- This isn't exactly anonymous. This is a provider who has a statutory obligation to basically police what goes on the internet. So I'd like to take a step back and explain how the statutes work and why this case is on all fours with Giardinello, Aguilar, and Nathanson. The statutes, as I mentioned, can be manipulated by someone, by any third party, which means that anyone, anyone can call into an ISP if it's reasonable to rely on bare-bones conclusory accusations and a cyber tip without any verification. Anyone can do that. At which point- You can take that cocaine and put it in someone else's baggage, too. You're assuming the worst case scenario, it seems to me. That's correct, Your Honor, because there's no evidence about what actually happened in this case. So the question is what reasonable inferences might flow from the information that we have. Now once ISP files a cyber tip to NCMEC, again, there's no requirement of verification. There's no requirement that the ISP endorse the accusations, merely that they forward them. So it doesn't reflect the existence of any investigation. NCMEC in turn is under a statutory automatic requirement to forward every cyber tip from an ISP to law enforcement. They must provide every cyber tip. So the fact that a cyber tip makes it from an ISP to NCMEC to the police doesn't indicate in any way that the image has been viewed or verified. It wouldn't even justify an inference if the synchronous administrator went in and confirmed that there was, in fact, even an upload at that date and time, let alone an unreasonable upload. But what about the fact that this particular warrant does refer to the upload and the date? I think Ms. New's position is that's the plus factor here. Your Honor, that's just a basic description that's required by the statute. The affidavit states other than incident type and incident time, absolutely nothing else is required. And that requirement does align pretty neatly with the statutory requirements as well. I think what's important here to remember is that a cyber tip, the only thing that ISPs are required to do is lodge a conclusory bare bones accusation. Once they do that, their reporting requirements are absolutely satisfied. More innocent mistakes are also likely common. We're dealing with an industry that's essentially big tech. They're going to have fancy lawyers who are going to advise them, look, if you see a photo of a naked two-year-old, just report it. Don't agonize over whether it's sufficiently sexual. Report it and let the police sort it out. That's what they're for. In this case, that would have taken a 30-second, two-minute phone call. Now, this case is on all fours with Nathanson, Aguilar, and Giardinello. A two-minute phone call from Osborne to someone at CPS? Exactly. Using the number that statutorily is required to be present on a cyber tip. In all three Supreme Court cases, involved conclusory accusations, which merely relayed the suspicions of a police officer and either tracked the statutory language or else included the statute itself. In Leon, the court said all three of those cases failed for probable cause and good-faith purposes. What about the fact that Osborne submitted his affidavit to the legal officer and passed muster with her and then passed muster with a different judge? Again, that's where Leon's bright-line rule is so important here. Those actions are indicia of subjective good-faith. The problem is when we have a conclusory accusation, one which merely ratifies the bare conclusions of others, the good-faith doctrine is inapplicable. Footnote 13 of Leon directly addresses this. It says that even if subjective good-faith indicia is present, the case falls on the suppression side of the bright-line rule. What's important about this case, too, is that our case contains the same precise error as that Supreme Court trio. The affidavit here merely seeks ratification of the bare conclusions of a synchronous employee. But here, things are even worse than they were in that trio of cases because unlike the police officers who are the suspicious parties in Nathanson, Aguilar, and Giardinello, here we have ISPs who are statutorily encouraged to over-report. So if a conclusory accusation is insufficient when it comes from police officers who are consumptively reliable sources, according to the Supreme Court, then the same type of accusation can't be enough when it comes from an organization which is uniquely incentivized to over-report. The unreliability of the synchronous representative, I'm not sure I'm willing to make, knowing that he or she has a statutory obligation to do the right thing. Well, I'd point out that there's no evidence one way or the other here. I ask you maybe to step back a little bit because maybe this is just a critique of the so lacking exception to the good faith exception, if you will. But it is a pretty tall order for a police officer to countermand the conclusion of a magistrate that probable cause exists. We've said something like the officer has to be plainly incompetent to qualify. What does that mean? That's sort of indicative to me of the language that we use in qualified immunity, only those who are plainly incompetent or knowingly violate the law. How do we operationalize that plainly incompetent standard here? I think in McCall, the court was a little bit broader and said even reckless or grossly negligent violations of the Fourth Amendment will fall on the suppression side of the good faith rule. And that's even if we construe this warrant as something other than bare of a balancing test. And I think that there is a very strong case for recklessness and gross negligence in a police officer with eight years of experience or however many who is responsible for training officers and prosecutors around the state on how to conduct these investigations with integrity. I think the basic kind of steamrolling through the cyber tip system's inherent limitations is reckless and grossly negligent. In terms of the balancing too, I should mention there is a pending case in Illinois. I don't believe that we need to get into the balancing. May I just finish? In which the legal landscape is quite different. May I sum up in two sentences? Yeah, sure. So the government is asking the court to basically say it's reasonable for officers to think that conclusory cyber tips wholly supplant basic police work. If that's true, then lots of parents and even public figures, anyone with an ex and their families are all at risk of humiliating intrusive searches and seizures. On the authority of Nathanson, Aguilar, and Giordano, the court should affirm suppression. Thank you. Thank you. Ms. New, you've got three minutes of rebuttal time. Thank you, Your Honor. Just to jump in, I think right where we left off, Nathanson, Aguilar, Spinelli, Giordano, these are all cases where the critical thing that they were lacking was any facts at all that could have led a neutral judge from crediting the officer's conclusion. And I understand there are certainly facts missing from this probable cause affidavit, but the question before the court is given what the totality of what is in the affidavit, including the statement of probable cause that reflects the cyber tip, including the background about what a cyber tip is, what an ESP is, what NCMEC is. All of those facts went to a judge here. And so while there may be criticisms about the cyber tip system, this judge had all of that in front of him or her and signed the warrant. And so the question in applying whether to apply the good faith exception is, could a reasonable law enforcement officer think that given everything that was in this warrant, the judge who signed this had a substantial basis for crediting the probable cause reflected? And so I think the fact that there are facts here, it's not bare conclusions. There are reasons to think based on the statute, based on the text of the probable cause, that Synchronos has actual knowledge of some of this information, had a basis for generating the cyber tip. They acted accordingly with that, right? They didn't just call the police, they sent it to NCMEC, the Clearinghouse for Information about Child Pornography Offenses. It's a national organization. NCMEC processed it. What about Kelly's view that Officer Osborne was called the number to verify something? What exactly was in the image? That was one of the issues that the trial judge had. Well, and so I think part of the problem here is there's not a lot of facts outside the warrant. In fact, there aren't very few facts outside the warrant. So there's nothing in the record that says that investigator Osborne didn't do that. There's nothing in the record that says what or what was not included in the cyber tip. Isn't the burden on... The burden is absolutely on the government, but on this question of whether or not there's indicia of probable cause, you look at the four corners of the affidavit. If the court's satisfied that there is indicia, which we think that there is, there are facts here that distinguish this case from Aguilar, Nathanson, Spinelli, Giordano, and we're not talking about probable cause. We're talking about could an officer who thought that everything in this affidavit read in a common sense way, gave the judge who signed it a substantial basis for finding probable cause, and we know... You think the legal officer did that? Yes, and that's... Let's assume the legal officer said, you know, there's something missing here. What would have happened then? It would have gone back to the officer, and the officer could have continued his investigation. Maybe made that call? Could have made the call or could have provided, you know, additional information that maybe he already had that he omitted from the search warrant affidavit. I was going to ask you, I mean, how much of this really turns on NCMEC and the cyber tip? If this were... Let's assume the same affidavit existed, and it was, you know, a riot... I mean, this was like back 20 years ago, right? There's someone at a riot aid that has done someone's photos and then calls the cops and said, I just did this photo thing for somebody, and there's child pornography in these pictures. They're taking pictures of naked kids. Could the cop then turn around and say, okay, I want to search that person? Sure, I think he could develop that within the search warrant. Supply facts as to why he thinks the judge should credit that. And then if the judge... You know, there's a question of, is there probable cause? And there's a separate question of, given what was in the affidavit, could a reasonable law enforcement officer think that there was... I mean, I think... I just think you would agree, like, if it was just some random person unrelated to the NCMEC system, an officer would know, look, I can't get a search warrant just based on this kind of random person over here that said, like, they saw child pornography. Do you think that's true? I think... Well, I think an honest... There's reason to believe the truthfulness of an honest citizen going forward, but I do think you need to have factual... I mean, this is what the law is and what it says. You need to have either a basis of knowledge, veracity, or corroboration. If it's a very detailed tip, and then that goes in the affidavit, then yes, a court, I think, could look at that and maybe find a conclusion. And how would you... I guess... And this just goes to one of the confusing things about this case. Like, how would you investigate that to get more information about it such that you could establish probable cause if literally all it is is someone saying, I saw pictures in someone else's possession that, to me, seemed like child pornography? Like, what would you... The officer can't go and, I mean, can't go grab that person and take their pictures, right? They can't look at those pictures themselves, right? So how would they investigate it further to develop additional probable cause? I think if they know the source of the information, right? To go and get... If there's additional details that would corroborate the probable cause or additional facts about the background of the person... At the end of the day, it just comes down to the credibility of the person who's making the assertion, right? Right. And the best the law enforcement officer can do is put all the facts truthfully in the affidavit and let the neutral, detached judge make the call, check his work, and decide if there's probable cause or not. And if the judge credits that and if there's a substantial basis, the government's position is, well, then the Leongood Faith Exception applies. And that's why we are asking this court to reverse Judge Walker's order declining to apply the Leongood Faith Exception in this case. Okay. Very well. Thank you so much. That case is submitted. We'll move along to the third case.